FILED
2023 Aug-29  AM 08:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

BRIAN D. GROVES,     )
          )
   Plaintiff,     )
          )
 vs.         )  Case No.  3:22-cv-00887-HNJ
          )
SOCIAL SECURITYADMINISTRATION, )
COMMISSIONER,    )
          )
   Defendant.    )

## <u>MEMORANDUM OPINION</u>

Plaintiff Brian Groves seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for supplemental security income benefits.[1] The undersigned carefully considered the record, and for the reasons expressed herein, the court **REVERSES** the Commissioner's decision and **REMANDS** for further consideration of the functional impairments resulting from Groves's lumbar condition, and for the ALJ to gather additional medical evidence regarding the extent of Groves's limitations, either from a consultative medical examiner or from Groves's treating

---

[1] Groves also filed an application for disability insurance benefits. However, during the administrative hearing, Groves's representative amended the alleged onset date to June 19, 2020, as the Commissioner had denied Groves's prior applications in 2009 and 2013, thereby precluding arguments for disability prior to those dates, and Groves possessed no evidence of disability prior to December 31, 2000, the latest date Groves enjoyed insured status due to his previous employment. For the same reasons, the ALJ stated the claim would proceed forward only as to Groves's SSI benefits. (Tr. 34-37).

providers.[2]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920(a)(4).  The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

---

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 10).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."  *Id.* at § 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02.  *Id.* at § 416.920(d).  If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R.  §§ 416.920(a)(4)(iii), 416.925.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 416.920(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the

requirements of past relevant work.  *See id.* § 416.920(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  20 C.F.R. §§ 416.912(b)(3), 416.920(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.  20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for

4

that of the ALJ. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Groves, age 49 on the date of the administrative hearing, filed an application for supplemental security income benefits on June 9, 2020, alleging disability as of January 2, 2000. (Tr. 37, 237-46).[3] The Commissioner denied Groves's claim upon initial review and upon reconsideration (Tr. 111-31), and Groves timely filed a request for a hearing. (Tr. 146-47, 169-70). An Administrative Law Judge ("ALJ") held a hearing on October 27, 2021 (Tr. 28-50).

The ALJ issued an opinion on November 30, 2021, denying Groves's claims. (Tr. 12-23). Applying the five-step sequential process, the ALJ found at step one that Groves did not engage in substantial gainful activity since June 19, 2020, the amended alleged onset date. (Tr. 18). At step two, the ALJ found Groves manifested the severe

---

[3] As discussed in Footnote 1, Groves also filed an application for disability insurance benefits, but Groves's entitlement to those benefits does not remain an issue for decision.

impairments of degenerative disc disease of the cervical and lumbar spine and major depressive disorder. (*Id.*). At step three, the ALJ found Groves's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Next, the ALJ found Groves exhibited the residual functional capacity ("RFC") to perform light work except he "can only perform simple and routine tasks"; "he can only respond appropriately to changes in a routine work setting"; and he "can have frequent interaction with coworkers and the public in work situations." (Tr. 19).

At step four, the ALJ determined Groves had no past relevant work. (Tr. 22). At step five, the ALJ determined Groves could perform a significant number of jobs in the national economy considering his age, education, work experience, and RFC. (*Id.*). Accordingly, the ALJ determined Groves has not suffered a disability, as defined by the Social Security Act, since June 19, 2020. (Tr. 23).

Groves timely requested review of the ALJ's decision. (Tr. 218-19). On May 19, 2022, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-3). On July 18, 2022, Groves filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Groves argues the ALJ's RFC finding "is not supported by substantial evidence and has been crafted from whole cloth." (Doc. 12, at 9). For the reasons discussed below, the undersigned concludes the ALJ properly assessed

Groves's RFC in light of his mental impairments, neck and shoulder problems, and non-severe impairments, but the RFC finding improperly considers the vocational effects of Groves's lumbar condition. That issue warrants remand to the Commissioner for further consideration.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1).

Social Security Ruling 96-8p dictates that an RFC assessment must first determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, pursuant to the functions described in paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945. SSR 96-8p, 1996 WL 374184, *1. The ALJ does not need to enumerate every piece of evidence or function used in his determination, but rather must simply portray consideration of the claimant's medical conditions in totality. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Once the ALJ has conducted that determination, the ALJ may then express the RFC in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 WL 374184, at *1; *see Castel*, 355 F. App'x at 263; *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Bailey v. Astrue*, No. 5:11-CV-3583-LSC, 2013 WL 531075, *6

(N.D. Ala. Feb.11, 2013).

The ALJ satisfied the regulatory requirements of assessing Groves's functional limitations based upon the totality of his medical condition and assigning Groves an RFC to work at a light exertional level with additional non-exertional limitations. However, Groves argues the ALJ impermissibly based his RFC finding entirely on his "own lay interpretation of the medical record," rather than on a physician's functional assessment. (Doc. 12, at 10). Groves also asserts the ALJ failed to properly develop the administrative record because he did not order a consultative examination or recontact any of Groves's physicians for a functional assessment.

Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See* 20 C.F.R. § 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); 20 C.F.R. § 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021) ("The Commissioner of the Social Security Administration has, at the hearing level, delegated to an administrative law judge the responsibility of determining a claimant's residual functional capacity and whether the claimant is disabled."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ.").

In reaching an RFC determination, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276

(11ᵗʰ Cir. 2003) (*per curiam*); *see also* 20 C.F.R. § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . ."). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim. *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 416.912(a)(1) (a claimant must submit or inform the Social Security Administration about all evidence relating to blindness or disability).

Groves's arguments test the intersection between the ALJ's duty to develop the record and the claimant's duty to prove his claim.  As the regulations specifically vest the ALJ with authority to assess RFC, the mere act of assessing RFC clearly does not cause an ALJ to exceed his authority and impermissibly "play doctor."  *See Castle v. Colvin*, 557 F. App'x 849, 853 (11ᵗʰ Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.").  The question remains whether the ALJ drew permissible conclusions from the medical evidence.

Generally, in the Eleventh Circuit, the ALJ's duty to develop the record does not require him to order a consultative examination "'as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'"  *Castle,* 557 F. App'x at 853 (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11ᵗʰ Cir. 2007)); *see also Rice v. Kijakazi*, No. 4:20-CV-01414-RDP, 2021 WL 3473219, at *6 (N.D. Ala. Aug. 6, 2021) (citations omitted) ("An ALJ does not assume the role of a doctor in

assessing a claimant's RFC and an ALJ is not required to base his or her RFC finding on a doctor's opinion."); 20 C.F.R. § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

In a persuasive unpublished opinion, the Eleventh Circuit rejected the argument that an ALJ may never "interpret raw data in a medical record." *Castle,* 557 F. App'x at 854.  Rather, when "'medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" *Id.* (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 17 (1st Cir. 1996)); *cf. Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021) ("While medical opinion evidence as to a claimant's physical abilities and limitations is not required in every case, it is particularly helpful in a complicated medical case like Pupo's, in which the claimant has many longstanding physical and mental ailments.").

An ALJ also may recontact a claimant's physicians for additional medical information, but the requirement to do so arises only "when the evidence received from that source is inadequate to determine whether the claimant is disabled." *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  "In evaluating whether it is necessary to remand" to recontact a physician, district courts consider "'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Id.* (quoting *Brown,* 44 F.3d at 935).

Therefore, the court must assess, based upon the particular facts of this case, whether the ALJ's RFC finding – absent a physician's functional assessment or any additional information from Groves's physicians – comported with applicable law and enjoyed substantial evidentiary support. *Whisby v. Colvin*, No. 5:13-CV-360 MTT, 2015 WL 150188, at *3 (M.D. Ga. Jan. 12, 2015) (citations omitted) ("There is no bright line between an ALJ's 'playing doctor,' which is not permissible, and an ALJ's making commonsense decisions, which is permissible. . . .  Determining where to draw the line between permissible and impermissible ALJ decision-making requires a fact-intensive review . . . .").

Groves correctly points out the record contains no functional assessment from a treating or examining physician.  The state agency physicians also did not offer functional assessments.  Rather, during the initial review and reconsideration of Groves's claim, both of which occurred before Groves amended his alleged onset date during the administrative hearing, the physical and psychological state agency assessors merely stated, "There is no functional evidence in [the] file in the relevant period prior to the expiration of the [date last insured]."  (Tr. 98-99, 102-03).

The ALJ acknowledged the lack of a functional assessment, but he nonetheless concluded his RFC finding was "generally supported by the objective evidence, objective clinical findings, diagnostic scans, laboratory findings and documented responses to treatment efforts, and the totality of the evidence of record, when considered as a whole."  (Tr. 22).

The medical evidence consists only of records from Huntsville Family Health Center, a primary care provider, and Dr. Eric Beck at Valley Center for Nerve Studies & Rehabilitation, a specialist.

At Huntsville Family Health Center between April 20, 2020, and July 6, 2021, Groves reported symptoms of back pain, anxiety, depression, and sleep disturbances, but he received only routine treatment and medication management. (Tr. 353-64, 390-404, 461-63). On April 20, 2020, the clinical examination revealed no acute distress, good judgment, normal mood and affect, full orientation, intact memory, normal ambulation, normal gait and station, intact cranial nerves and sensation, and normal muscle tone and motor strength. (Tr. 364). Groves's other appointments with Huntsville Family Health Center did not include clinical findings. Some of the visits occurred via telehealth due to the Covid-19 pandemic. (Tr. 355-59 (July 24, 2020); Tr. 353-55 (October 26, 2020); Tr. 390-92 (February 24, 2021); Tr. 462-63 (July 6, 2021)). On May 19, 2020, an ultrasound revealed minimal risk of clinically significant fibrosis related to Groves's viral hepatitis C. (Tr. 406). On July 6, 2021, Groves reported doing well with no new complaints, as his medication regime effectively controlled his conditions. (Tr. 462-63).

On December 24, 2019, Groves presented to Dr. Eric Beck at Valley Center for Nerve Studies & Rehabilitation with complaints of neck, shoulder, and back pain from an automobile accident on November 25, 2019. He also reported nervousness, thyroid problems, joint pain, and muscle pain. (Tr. 423-24, 443-44). During the clinical

examination, Groves displayed no acute distress, full orientation, and appropriate mood and affect. He held his neck stiffly and exhibited limited range of motion in his neck, lumbar, pelvis, and right upper extremity. He also displayed spinal scoliosis with hypertonicity bilateral rhomboid and quadratus lumborum. Clinical tests related to movement, including straight leg raise and gait tests, all produced negative results. Dr. Beck opined Groves's complaints related to his motor vehicle accident. (Tr. 444).

Dr. Beck prescribed a topical pain cream, physical therapy and medication. He ordered an MRI of Groves's right shoulder and cervical and lumbar spine, and he referred Groves to a spinal surgeon, but Groves could not travel to consult with the surgeon. (Tr. 420-21, 429-30, 444). During the administrative hearing, Groves testified he did not see the spinal surgeon because he does not have health insurance. He remarked if he did have insurance, he would undergo the surgery as soon as possible to alleviate the pain he "very much" feels. (Tr. 39).

Groves underwent the ordered MRI's on January 8, 2020. The lumbar MRI revealed edema diffusely involving the lamina and transverse process of L4 on the right, possibly reflecting changes of a nondisplaced fracture; disc herniation at L3-L4 with an accompanying 4-mm anterolisthesis; and facet hypertrophy with a concentric disc bulge at L4-L5. (Tr. 450). The right shoulder MRI revealed no evidence of a rotator cuff tear; degenerative subchondral edema and cystic changes within the posterior inferior glenoid with glenoid chondromalacia; and probable tearing of the posterior inferior and inferior labrum with an adjacent para labral cyst. (Tr. 452). The cervical spine MRI

13

revealed mild degenerative change, chronic in appearance, from the levels of C3-C4 through C6-C7, with no significant central canal or neural foraminal compromise; and disc protrusion at T3-T4. (Tr. 457).

On January 14, 2020, Groves returned to Dr. Beck for follow-up on his neck, lumbar, and right shoulder pain. He presented as fully oriented and in no acute distress, with appropriate mood and affect. Dr. Beck advised him to continue physical therapy. (Tr. 435-36). On February 3, 2020, Groves reported feeling better overall, and he requested additional physical therapy. He displayed limited cervical and lumbar spine range of motion and normal bilateral upper extremity range of motion. (Tr. 437). On February 5, 2020, near the completion of Groves's physical therapy sessions, Groves reported improvement in his neck and shoulder, but progress in his lumbar had stalled. Dr. Beck noted the lumbar MRI demonstrated herniation at L3-L4. Dr. Beck concluded additional physical therapy would not assist Groves, and he requested evaluation by a spinal surgeon. During the examination, Groves again demonstrated limited cervical and lumbar spine range of motion and normal bilateral upper extremity range of motion. (Tr. 431-34, 439).

On March 18, 2020, an employee of TriMed Billing Solutions, a practice management provider, emailed a member of Dr. Beck's staff stating, "Patient unable to travel for spine surgeon consult." (Tr. 434). On March 23, 2020, Dr. Beck noted Groves "was previously scheduled to see a spine surgeon at Birmingham, but "[l]ogistically this is not going to [be] possible for him." (Tr. 441). On the same date,

Groves reported persistent pain, and Dr. Beck noted "objective findings were consistent with possible lumbar transverse process fracture as well as [herniated nucleus pulposis] at the adjacent level." Dr. Beck opined Groves had plateaued with conservative care, and he released Groves as a patient after refilling his medications. (*Id.*).

Regarding Groves's mental impairments, the ALJ reasoned Groves did not receive any formal mental health treatment, and a depression screening by his primary care provider produced negative results. Though Groves occasionally reported anxiety and depression to his medical providers, he denied hallucinations and suicidal ideations, and he displayed normal mood, affect, and memory. (Tr. 21). The medical records, as explicated above, provide substantial evidentiary support for the ALJ's assessment. The medical evidence regarding Groves's mental health provided substantial evidentiary support for the ALJ's conclusion that Groves did not suffer disabling mental impairments; the ALJ did not need to rely upon the opinion of a treating or consulting physician to support his conclusion.

Regarding Groves's non-severe impairments, including hypertension, hypothyroidism, insomnia, and hepatitis C, the ALJ concluded those conditions did not cause any significant limitations. Substantial record evidence supports that conclusion. As the ALJ reasoned, Groves consistently reported stability of his hypertension, hypothyroidism, and insomnia to his treating providers, and he denied symptoms such as shortness of breath, chest pain and pressure, palpitations, headaches, heat or cold

intolerance, weight loss, numbness or tingling, neck masses, joint pain, and chest tightness. Moreover, clinical testing demonstrated minimal risk of significant symptoms from hepatitis C. (Tr. 21-22). Therefore, the ALJ's assessment of Groves's non-severe impairments enjoyed substantial evidentiary support, even without the opinion of a treating or consulting physician.

Regarding the vocational effect of Groves's orthopedic impairments, the ALJ reasoned that the clinical examination during Groves's first visit to Dr. Beck reflected the straight leg-raise and toe-heel walk tests produced negative results, notwithstanding the revelation of a decreased range of motion in the right shoulder and cervical and lumbar spine. Moreover, Groves's "drop arm test, apprehension test, impingement sign test, and comprehension/Spurling's test were negative, and he had normal motor strength of his upper and lower extremities bilaterally." (Tr. 20). Though the right shoulder MRI revealed "degenerative subchondral edema and cystic changes within the posterior inferior glenoid with glenoid chondromalacia and probable tearing of the posterior inferior and inferior labrum with an adjacent para labral cyst," there existed no rotator cuff tear. (Tr. 21). The cervical MRI revealed only mild degenerative changes, with no significant central canal or neural foraminal compromise and disc protrusion at T3-4. (*Id.*). Though the lumbar MRI revealed disc herniation at L3-4 and disc bulge at L4-5, Groves received only conservative treatment, which improved his pain and symptoms.

However, the ALJ also observed that by February 25, 2020, the progress in

Groves's lumbar ailment had stalled, though his shoulder and neck had improved.  The

ALJ then stated Groves

> was referred to an orthopedic surgeon, but he never went to the referral.
> It was noted on his March 18, 2020 visit that he was unable to travel for
> his spine surgeon consultation . . . .  The claimant continued to be treated
> conservatively with medication only, and his back symptoms continued to
> improve.

(*Id.*).

In addition, the ALJ observed that during visits to his primary care provider,

Groves "endorsed some back pain and occasional muscle aches, but he repeatedly

denied arthralgias, joint pain, weakness, and swelling in his extremities." (*Id.*).  The ALJ

also considered that other than one visit during which Groves exhibited slight edema

of his ankles, he displayed normal gait, station, and ambulation.  (*Id.*).

Substantial evidence supports the ALJ's consideration of Groves's neck and right

shoulder impairments.  Clinical findings regarding Groves's neck included only some

decreased range of motion, and the cervical MRI revealed only mild degenerative

changes, with no significant central canal or neural foraminal compromise.  The ALJ

did not need to rely on the opinion of a treating or examining physician to conclude

Groves's neck impairments did not present disabling limitations.

Moreover, though Groves exhibited decreased range of motion in his right

shoulder, the other tests for his upper extremities produced normal results, and he

maintained normal motor strength in both upper extremities.  Though the MRI revealed

some problems within Groves's shoulder joint, he did not suffer a rotator cuff tear.

Therefore, even though some evidence existed to support diminished function in Groves's right shoulder, substantial evidence supports the ALJ's decision that Groves's shoulder problems did not present a disabling impairment.  As the evidence supporting the ALJ's assessment reaches the level of "substantial," the court may not weigh the evidence supporting the ALJ's conclusion.  *See Winschel*, 631 F.3d at 1178 (the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").  Given the substantial evidence supporting the ALJ's assessment of Groves's shoulder problems, the ALJ did not need to rely on the opinion of a treating or examining physician to conclude Groves's shoulder impairments did not present disabling limitations.

However, the ALJ did not properly consider Groves's lumbar condition.  During Groves's first visit to Dr. Beck on December 24, 2019, he displayed limited range of motion in his back and pelvis, scoliosis, and muscle pain.  On January 8, 2020, the lumbar MRI revealed a possible L4 fracture and herniated and bulging discs resulting in misaligned vertebra and widening of the vertebral spaces.  (Tr. 450).  The ALJ did not explain why those fairly significant clinical and objective findings would not support substantial impairments, other than to state that Groves received conservative treatment of medication and physical therapy, "which improved his pain and

symptoms." (Tr. 21). However, even the ALJ acknowledged the effectiveness of the conservative treatment eventually abated, as by February 25, 2020, Groves reported stalled progress with his back. The ALJ stated Groves "continued to be treated conservatively with medication only, and his back symptoms continued to improve." (*Id.*). However, the record does not fully support that conclusion.

On March 23, 2020, Dr. Beck released Groves from his care, but he only did so because he believed Groves had "plateaued with conservative care." (Tr. 441). On that date, Groves continued to report "fairly persistent pain," and Dr. Beck noted Groves's MRI findings supported a possible lumbar fracture. (*Id*). Groves did not return to Dr. Beck after that date, so Dr. Beck did not continue to treat Groves conservatively, contrary to the ALJ's statement. The only records dating after Dr. Beck released Groves emanate from Huntsville Family Health Center.

The only clinical findings from Huntsville Family Health Center, from April 20, 2020, endorse normal ambulation, gait, and station, and normal muscle tone and motor strength. Groves did not complain of lumbar pain. (Tr. 361-64). During a July 24, 2020, visit, Groves did not complain of lumbar pain. (Tr. 358). On October 26, 2020, Groves reported lumbar pain and sleep disturbances, but no muscle aches, joint pain, or extremity swelling. (Tr. 354). On February 24, 2021, Groves reported muscle aches and lumbar pain, but no depression, sleep disturbance, joint pain, or extremity swelling. (Tr. 390-91). On July 6, 20201, he reported no muscle aches, joint pain, lumbar pain, or extremity swelling. (Tr. 462-63). Huntsville Family Health Center providers never

prescribed Groves any pain medication.

These records present conflicting versions of the extent of Groves's lumbar impairment, as Dr. Beck's records depict a more serious condition with more serious limitations than the records from Huntsville Family Health Center. But unlike with Groves's shoulder impairment, the court concludes Groves's history of conservative treatment, from which he derived varying levels of relief, does not reach the "substantial" level when considered along with Groves's continued complaints of lumbar pain; an MRI depicting a possible lumbar fracture, a herniated disc causing misaligned vertebrae, and a disc bulge causing vertebral space widening; a specialist's statement that Groves's objective findings could reasonably produce persistent pain; and the specialist's recommendation of surgical intervention.

In addition, the ALJ did not properly consider the relatively conservative nature of Groves's treatment. Though Dr. Beck recommended surgery, Groves could not travel to consult with the surgeon, and he testified during the administrative hearing he did not undergo surgery due to lack of insurance.

When a claimant cannot afford treatment, an ALJ should not draw a negative inference from the claimant's failure to seek additional treatment. *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1998); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[P]overty excuses [a claimant's] noncompliance" with medical treatment.). Thus, "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, the court

[should] remand for further consideration." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11ᵗʰ Cir. 2015) (citing *Ellison*, 355 F.3d at 1275; *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11ᵗʰ Cir. 2012)).  "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.* at 1268 (citing *Ellison*, 355 F.3d at 1275).

The ALJ relied heavily upon Groves's failure to undergo lumbar surgery, as he repeatedly referenced the conservative nature of Groves's treatment as a basis for imposing non-disabling limitations.  In fact, when addressing the results of Groves's lumbar MRI, the ALJ presented Groves's history of relatively conservative treatment as the *only* reason for imposing non-disabling limitations.  (Tr. 21)  Yet the ALJ did not mention Groves's statement that he did not undergo surgery because he lacked health insurance, and he did not assess whether Groves could afford the surgery.  Therefore, the ALJ's error in assessing Groves's failure to undergo surgery did not manifest as harmless.

For all the reasons discussed, Groves's lumbar impairment does not present such a straightforward condition that the ALJ could assess the extent of Groves's functional impairments without the assistance of a physician's opinion.  The evidence, as it currently stands, cannot lead to an adequate assessment of Groves's disability, and under the facts of this case, the ALJ's RFC finding did not enjoy substantial evidentiary support.

The ALJ's failure to render an RFC finding without substantial evidentiary support materially affected the ALJ's decision that Groves did not suffer a disability. The ALJ's RFC finding mirrored his hypothetical question to the vocational expert (VE) during the administrative hearing.  (Tr. 19, 46-47).  The VE opined that an individual with the proposed RFC, and of Groves's age, education, and work experience, could perform jobs existing in significant numbers in the national economy, including merchandise marker, cashier, and cleaner.  (Tr. 47).  The ALJ relied upon the VE's opinion in finding Groves did not suffer a disability.  (Tr. 23).

"'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).  "'The ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'"  *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).  But, as discussed, the ALJ did not properly determine Groves's complaints of disabling lumbar pain lacked sufficient support.  Therefore, the VE's testimony did not constitute substantial evidence, and the ALJ erred in relying upon it.

## CONCLUSION

For the reasons discussed in this opinion, the ALJ's finding that Groves's lumbar condition did not result in disabling impairments did not proceed in accordance with applicable law, and the finding lacked substantial evidentiary support.  The ALJ could

not adequately consider the vocational effects of Grove's back impairment without the assistance of a treating or examining physician's opinion. Accordingly, the circumstances warrant remand for the ALJ to further consider the functional impairments resulting from Groves's lumbar impairment, and to gather additional medical evidence regarding the extent of Groves's limitations, either from a consultative medical examiner or from Groves's treating providers.

**DONE** this 29th day of August, 2023.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE